**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **KRISTINA MUELLER**<br>2291 Canteen Circle<br>Odenton, MD 21113<br>*Resident of Anne Arundel County*<br><br>and<br><br>**JILL MUELLER**<br>2291 Canteen Circle<br>Odenton, MD 21113<br>*Resident of Anne Arundel County*<br><br>      Plaintiffs,<br><br>      v.<br><br>**CHESAPEAKE BAY SEAFOOD HOUSE ASSOCIATES, L.L.C.**<br>1960 Gallows Road, Suite 200<br>Vienna, Virginia 22182<br><br>Serve:  Robert Easby-Smith<br>         4218 Glenridge Street<br>         Kensington, Maryland 20895<br><br>      Defendant. | Civil Action No.:<br><br><br><br><br>Class/Collective Action Claim<br><br><br><br><br><br><br><br><u>Jury Trial Requested</u> |

## COLLECTIVE ACTION COMPLAINT FOR WAGES OWED

KRISTINA MUELLER and JILL MUELLER, Plaintiffs, by and through their undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submit their Complaint against CHESAPEAKE BAY SEAFOOD HOUSE ASSOCIATES, L.L.C., Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, interest, reasonable attorneys' fees and costs under Maryland Wage and

Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401, *et seq.* (hereinafter, "MWHL"); and unpaid wages, treble damages, interest, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq.* (hereinafter, "MWPCL"), and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Chesapeake Bay Seafood House Associates, L.L.C. ("Defendant") operates several food and beverage establishments within Maryland, Virginia and West Virginia. Defendant hired Plaintiffs and other similarly situated employees to perform duties relating to these establishments. Plaintiffs and other similarly situated employees hold or held the title of server or bartender. Their duties centered on preparing various food and beverage items for service.

Defendant paid Plaintiffs and other similarly situated employees an hourly tip-credit. In addition to these wages, they also received tips. A combination of these payments did not result in Plaintiffs and others similarly situated being paid correctly. They were paid well below the standard minimum hourly wage rate. Plaintiffs' and others similarly situated employees' duties did not exempt them from the minimum wage requirements.

Employers are only permitted to pay tipped employees below the minimum wage when certain conditions are satisfied. These conditions are outlined within the tip-credit provisions of the the Fair Labor Standards Act ("FLSA") and Maryland Wage and Hour Law ("MWHL"). These conditions are not satisfied if the untipped work that is related to their tipped occupation exceeds twenty (20) percent of the employees' workweek. They are also not satisfied if employees are required to perform work that is unrelated to their tipped occupation. Under these circumstances, the employer must pay the full minimum wage. Both these circumstances exist in the present controversy.

Defendant required Plaintiffs and others similarly situated to perform untipped work related to their tipped occupation in excess of twenty (20) percent of their workweek. Plaintiffs and others similarly situated received tips for their work serving food, drinks and interacting with customers. However, Plaintiffs and other servers and bartenders were also required to perform work that did not give them the ability to earn tips. This untipped work was performed before, during and after their tip-producing tasks. They performed this work without being paid at an untipped wage.

Defendant also required Plaintiffs and others similarly situated to perform work that was unrelated to their tipped occupation. This work involved routine tasks relating to sanitation, health and maintenance. This work was performed for the duration of their employment. These conditions make clear that Plaintiffs and others similarly situated were entitled to the full minimum wage. However, Defendant failed altogether to pay Plaintiffs and others similarly situated these wages. Defendant willfully violated the regulations that govern tipped employees.

Defendant promoted other unlawful practices. Defendant habitually required Plaintiffs and others similarly situated to work "off-the-clock." This typically occurred at the end of their shifts. Plaintiffs and other bartenders and servers were consistently forced to clock out at the times their shifts were scheduled to end. However, Defendant would regularly require Plaintiffs and others similarly situated to continue working.

When working off-the-clock, Plaintiffs and others similarly situated were forced to perform various chores. This primarily consisted of manual labor. Plaintiffs and others similarly situated were required to scrub and mop floors. They had to clean their workstations. They were required to take out the trash. They had to dust televisions and picture frames. They had to wipe down chairs and tables. They were required to polish the bar. Stocking various items in the bar and

kitchen were other routine duties. They were also required to scrub vents, drains and baseboards, in addition to pipes in the kitchen.

Defendants consistently required Plaintiffs and others similarly situated to perform all of these tasks off-the-clock. This occurred for the duration of Plaintiffs' and other bartenders' and servers' employment. Plaintiffs and others similarly situated worked multiple hours off-the-clock. There are countless hours that Plaintiffs and others similarly situated worked that remain unrecorded. All of these hours were compensable.

Plaintiffs and other similarly situated employees were not paid for any off-the-clock labor they performed. They failed to receive the minimum wage for each hour of work. This in turn resulted in Plaintiffs and others similarly situated to not receive proper overtime payments. They were consistently cheated out their wages.

Defendant's unlawful policies caused Plaintiffs and others similarly situated to be denied the compensation they rightfully earned. Defendant's policies are direct infringements on the tip credit, minimum wage and overtime requirements set forth by the FLSA and MWHL. Through these infringements, Defendant willfully and intentionally evaded the payment of wages owed to Plaintiffs and others similarly situated. These circumstances mandated the filing of this Complaint.

## THE PARTIES

1.      Plaintiff Kristina Mueller (hereinafter, "Kristina") is an adult resident of Anne Arundel County, Maryland.

2.      Plaintiff Jill Mueller (hereinafter, "Jill") is an adult resident of Anne Arundel County, Maryland.

3.      Defendant Chesapeake Bay Seafood House Associates, L.L.C. (hereinafter, "Defendant") is an incorporated for profit business engaged in the sale of food and beverage items.

4.     Defendant maintains its principal corporate office in Vienna, Virginia.

5.     Any reference to Defendant shall include Chesapeake Bay Seafood House Associates, L.L.C.'s corporate officers and all those empowered to act as agents of the corporation, either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency. To the extent individual agents of Chesapeake Bay Seafood House Associates, L.L.C. are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

6.     Defendant operates various dining establishments.    These establishments are located in Maryland, Virginia and West Virginia.

7.     There are approximately twenty-nine (29) establishments owned and operated by Defendant. Upon information and belief, the same unlawful practices described herein are implemented at all of these establishments. The locations of these establishments are as follows:

8.     Chili's Baileys Crossroads, 5501 Leesburg Pike, Falls Church, Virginia 22041; Chili's Manassas, 10600 Sudley Manor Drive, Manassas, Virginia 20109; Chili's Potomac Mills, 14432 Gideon Drive, Woodbridge, Virginia 22192; Chili's Charlottesville, 100 Zan Road, Charlottesville, Virginia 22901; Chili's Winchester, 200 Featherbed Lane, Winchester, Virginia 22601; Chili's Staunton, 1025 Richmond Avenue, Staunton, Virginia 24401; Chili's Dulles Town Crossing, 45555 Dulles Eastern Plaza, Sterling, Virginia 20166; Chili's Fredericksburg, 3104 Plank Road, Fredericksburg, Virginia 22407; Chili's Massaponax, 10010 Southpoint Parkway, Fredericksburg, Virginia 22407; Chili's Lynchburg, 15147 Wards Road, Lynchburg, Virginia 24502; Chili's Springfield, 6250 Inter Parcel Road, Alexandria, Virginia 22315; Chili's Chesterfield, 12231 Chattanooga Plaza, Midlothian, Virginia 23112; Chili's Harrisonburg, 1752 E. Market Street, Harrisonburg, Virginia 22801; Chili's Virginia Center, 9950 Brook Road, Glen

Allen, Virginia 23059; Chili's Stafford, 1030 Stafford Market Place, Stafford, Virginia 22556; Chili's Culpeper, 15181 Montanus Drive, Culpepper, Virginia 22701; Chili's Chester, 12305 Jefferson Davis Highway, Chester, Virginia 23831; Chili's Alexandria, 6601 Richmond Highway, Alexandria, Virginia 22306; Chili's Gainesville, 4995 Wellington Road, Gainesville, Virginia 20155; Chili's Waldorf, 2960 Festival Way, Waldorf, Maryland 20601; Chili's Bowie, 16401 Heritage Boulevard, Bowie, Maryland 20716; Chili's Salisbury, 2750 N. Salisbury Boulevard, Salisbury, Maryland 21801; Chili's Linthicum, 1715 W. Nursery Road, Linthicum Heights, Maryland 21090; Chili's Hagerstown, 245 Railway Lane, Hagerstown, Maryland 21740; Chili's Easton, 28587 Marlboro Avenue, Easton, Maryland 21601; Chili's Frederick, 5100 Pegasus Court, Frederick, Maryland 21704; Chili's Martinsburg, 884 Foxcroft Avenue, Martinsburg, West Virginia 25401; On the Border Bowie, 16403 Heritage Boulevard, Bowie, Maryland 20716.

9. The aforementioned establishments are all inter-dependent. They serve to function as an inter-reliant restaurant chain.

10. All Chili's franchises operate under the umbrella of Brinker International. Brinker International is the parent company to more than sixteen hundred (1,600) restaurants with over one hundred thousand (100,000) employees worldwide. Brinker sets certain employment standards for all of its restaurants. This includes the restaurants operated by Defendant.

11. Defendant is subject to the FLSA, MWHL and the MWPCL by the nature of its business. Defendant is primarily engaged in the sale of food and beverage items.

12. Defendant is subject to the FLSA, MWHL and the MWPCL due to the amount in revenues generated; Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

13.     At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce by the nature of their duties performed as part of their employment with Defendant.

14.     At all times throughout Plaintiffs' employment, Defendant fell within the purview of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

15.     Plaintiffs and others similarly situated worked as non-exempt employees for Defendant.

16.     From approximately January 1, 2006 to October 30, 2014, Plaintiff Kristina was employed with Defendant.

17.     From approximately October, 2005 until October 30, 2014, Plaintiff Jill was employed with Defendant.

18.     At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including the schedules of Plaintiffs and others similarly situated.

19.     Defendant possessed and exercised authority to determine the hours worked by Plaintiffs and other similarly situated employees.

20.     Defendant had the authority to control Plaintiffs' tasks and the tasks of others similarly situated.

21.     Defendant had the power and authority to change the course of Plaintiffs' and other similarly situated employees' duties.

22.     Defendant made all decisions relating to Plaintiffs' and other similarly situated employees' rates and method of pay.

23.   Plaintiffs and members of the putative class recognized Defendant's authority and obeyed Defendant's instructions.

## JURISDICTION AND VENUE

24.   Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*.  This Court also has subject matter jurisdiction under 28 U.S.C.  § 1331, as this matter presents a federal question.

25.   Discretionary supplemental jurisdiction of Plaintiffs' Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiffs' federal claims are based.

26.   Furthermore, no reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

27.   Pursuant to 28 U.S.C. § 1391 (b), venue is appropriate; the unlawful acts central to this matter occurred within the State of Maryland.  Plaintiffs are residents of the State of Maryland and have been for the entirety of the relevant period.

28.   This Honorable Court has personal jurisdiction over Defendant; Defendant is incorporated under the laws of Maryland and conducts sufficient business within the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

29.   Defendant operates numerous dining establishments throughout the Mid-Atlantic region.  These establishments serve to function as an inter-reliant restaurant chain.

30. Defendant is a franchise of Chili's restaurants. Defendant staffs numerous employees to assist with the operation of its restaurants.

31. Defendant hired Plaintiffs and other similarly situated employees to perform various food and beverage services. Plaintiffs and others similarly situated held the titles of server and bartender. They performed the typical duties associated with these roles, which consisted of serving food and drinks.

32. In their capacity as servers, Plaintiffs and others similarly situated would wait on tables, taking food and beverage orders. They would describe daily specials. They would bring food out to tables and regularly check on patrons. At the end of a customer's meal, Plaintiffs and others similarly situated would print the bill. From there, they had to collect payment, which often involved processing credit cards.

33. In their capacity as bartenders, Plaintiffs and others similarly situated would pour and mix drinks for patrons. They would also take food orders for patrons who wanted to eat at the bar. Plaintiffs and other similarly situated employees were expected to check on customers for refills. They had to ensure prompt service. Plaintiff and other bartenders were also responsible for collecting payments.

34. Plaintiffs and others similarly situated would typically receive tips from bar and restaurant patrons in exchange for the work described above. However, Plaintiffs and others similarly situated also performed other types of work that did not give them the ability to earn tips. This work did not involve interactions with customers. It did not consist of serving food and beverages.

35. This work often involved routine tasks relating to health and sanitation. Sanitizing the kitchen and bar area are common examples. They also had to bag and take out the trash. In

the mornings and evenings, Plaintiffs and others similarly situated performed various cleaning tasks. This consisted of polishing the bar, scrubbing floors and tables, cleaning mirrors and dusting. Plaintiffs were also expected to perform routine maintenance work. This typically occurred during the latter portion of their shifts.

36.     Plaintiffs and others similarly situated were also required to perform many preparatory tasks that did not give them the opportunity to earn tips. They had to cut fruits and other garnishes for use in mixed drinks. For purposes of freshness, these garnishes were kept in special trays. Plaintiffs and others similarly situated were responsible for labeling the trays in order to indicate the time the garnishes were cut. A similar preparatory task involved labeling opened bottles of wine with the time they were opened. This was also for purposes of ensuring freshness.

37.     Plaintiffs and others similarly situated were also required to "tap" fresh kegs. They had to stock ice, bottled liquor, wine and beer. They were also required to make salsa, queso dip and tableside guacamole. Setting up, stocking and operating the soup machine were other routine tasks they performed.

38.     For these and similar tasks, Plaintiffs and others similarly situated had no opportunity to earn tips. The cleaning tasks in particular were performed out of the customers' sight.

39.     At all times relevant, Defendant demanded that Plaintiffs and others similarly situated perform all of the tasks described above, regardless of whether said tasks gave Plaintiffs and other bartenders and servers the ability to earn tips.

40.     Plaintiffs and others similarly situated performed their tasks to the benefit of Defendant.

41.     Plaintiffs and other similarly situated employees performed their duties to the benefit of Defendant's patrons.

42.     Plaintiffs and other similarly situated employees performed their tasks to the extent required by Defendant.

43.     For the aforementioned work, from approximately January 1, 2006 to October 30, 2014, Plaintiff Kristina was classified as a tipped employee. In addition to tips, she received bi-weekly payments reflecting an hourly tip-credit of three dollars and sixty-three cents ($3.63) per hour.   She was paid in this manner for the duration of her employment.[1]

44.     For the aforementioned work, from approximately October 2005 to October 30, 2014, Plaintiff Jill was also classified as a tipped employee.  In addition to tips, she received bi-weekly payments reflecting an hourly tip-credit of three dollars and sixty-three cents ($3.63) per hour.   She was paid in this manner for the majority of the relevant period.[2]

45.     Plaintiffs and other similarly situated employees engaged in a variety of roles.  They held the titles of server and/or bartender throughout their employment with Defendant.   Their duties were also performed at Defendant's multiple restaurants.

46.     From 2006 through 2009, Plaintiff Kristina was employed as a server at Defendant's Chili's location in Bowie.

---

[1] During certain periods throughout their employment, Plaintiffs worked as certified trainees. They were paid approximately seven dollars ($7.00) per hour for the performance of this role.

[2] In approximately March of 2007, in addition to her bartending and server shifts, Plaintiff Jill also began working as a shift manager. When performing this role, she was paid fourteen dollars ($14.00) per hour. This role required the completion of additional tasks. This primarily consisted of having to make the schedules for other bartenders and servers. She typically created these schedules on one of her days off each week.  Creating these schedules typically took approximately ten (10) hours to complete. Completing this task in combination with her regular duties caused Plaintiff Jill to routinely work in excess of forty (40) hours a week.  Defendant failed to compensate Plaintiff Jill for working these overtime hours.

47.     From 2009 until October 30, 2014, Plaintiff Kristina was employed as a server and bartender at Defendant's Chili's Linthicum location.

48.     From 2009 through 2010, Plaintiff Kristina worked exclusively as a server at the Linthicum location.

49.     From 2011 until 2013, in addition to working shifts as a server, Plaintiff Kristina also worked as a bartender at the Linthicum location.

50.     In 2013, Kristina worked exclusively as a bartender at the Linthicum location. She assumed this role until the time her employment ended on October 30, 2014.

51.     From 2005 until 2006, Plaintiff Jill was employed as a server at Defendant's Chili's Bowie location.

52.     In addition to her server shifts, beginning in 2006 and continuing into 2009, Plaintiff Jill also began working as a bartender.

53.     Following this, from 2009 until October 30, 2014, Plaintiff Jill was employed as a bartender and a server at Defendant's Chili's Linthicum location.

54.     Plaintiffs and others similarly situated were routinely scheduled to work forty (40) hours or more each week.  The schedules that Plaintiffs and others similarly situated were assigned varied. Plaintiffs and others similarly situated typically worked anywhere from four (4) to seven (7) shifts per week.  Each shift would typically last between six (6) to nine (9) hours. The length of each shift depended on how busy the restaurant was and how many other staff members were scheduled.

55.     During each shift, Plaintiffs and others similarly situated would spend approximately thirty (30) percent to fifty (50) percent of their time performing work in which they did not interact with customers. Therefore, they did not have the opportunity to earn tips during

periods when this work was performed. This work primarily centered on cleaning and restocking the restaurant. Common examples of this work are as follows[3]:

*As Bartender:*

- Making bulk batches of sour mix, frozen margarita mix and strawberry puree;

- Laying down bar and floor mats;

- Taking floor mats outside to be sprayed and cleaned;

- Stocking ice, liquor bottles and beer;

- Setting up fruit trays;

- Cutting lemons, limes and oranges;

- Labeling fruit trays to indicate when the fruit was cut;

- Labeling bottles of wine to indicate when they were opened;

- Rolling silverware;

- Making queso dip, salsa and tableside guacamole;

- Expediting soups and salads from the kitchen;

- Matching the correct sides to entrees;

- Adding condiments to food items, which includes salad dressing and various sauces;

- Adding utensils to food items, including ladling spoons;

- Scrubbing floors;

- Cleaning mirrors;

- Cleaning computer workstations;

---

[3] This list is non-exhaustive; Plaintiffs and others similarly situated routinely performed other tasks that did not give them the opportunity to earn tips.

- Cleaning the keg room;

- Organizing kegs and boxes within the keg room;

- Applying furniture polish to the bars;

- Wiping down booths and chairs; and

- Wiping down and cleaning the inside of beer and wine coolers.

*As Server:*

- Setting up, stocking, breaking down and cleaning the soup machine;

- Making coffee and tea;

- Portioning sugar for sweet tea;

- Setting up salsa and dressing stations;

- Sweeping the restaurant floor;

- Bagging trash cans;

- Retrieving dishes from the dishwashing rack and handing them to the cooks in the kitchen;

- Replacing batteries in table computers;

- Turning on and off the televisions;

- Dusting televisions;

- Dusting picture frames;

- Rolling silverware;

- Cleaning vents, grates and baseboards;

- Scrubbing drains and pipes in the kitchen;

- Scrubbing around the "expo" area; and

- Preparing the restaurant for pest exterminations, which required the storage of utensils and covering tables and other items with trash bags.

56. Plaintiffs and others similarly situated performed this untipped work throughout their shifts. On a given shift, Plaintiffs and others similarly situated would spend two (2) to three (3) hours performing these untipped tasks.

57. Much of this untipped work was completed while Plaintiffs and others similarly situated were still on-the-clock. Thus, they were only paid three dollars and sixty-three cents ($3.63) per hour for the time they spent performing tasks that did not give them the opportunity to earn tips.

58. Defendant used a standard point-of-sale system to record hours worked by tipped and non-tipped employees. Through the system, Defendant could create different "clock in" codes that would allow tipped employees to clock in at the full minimum wage rate when performing non-tipped work, while clocking in at a subminimum, tip-credit wage rate, when serving customers.

59. Defendant failed to properly utilize this system to account for the times when Plaintiffs and others similarly situated performed non-tipped related tasks. At all times that Plaintiffs and others similarly situated were on-the-clock, the tip-credit wage rate was enforced.

60. Defendant also forced Plaintiffs and others similarly situated to perform untipped work off-the-clock. Plaintiffs and others similarly situated were frequently required to clock out prior to performing their untipped tasks. These decisions were made by management officials, who would instruct certain Plaintiffs and others similarly situated to clock out prior to performing their untipped work. This uncompensated time typically lasted between thirty (30) minutes to

three (3) hours.  The frequency of these off-the-clock shifts varied and could happen between one (1) to three (3) times per pay period.

61.    The off-the-clock work performed by Plaintiffs and others similarly situated consisted of the same sort of cleaning and restocking described above.  Plaintiffs and others similarly situated were not compensated for the off-the-clock work they performed.  During these periods, they did not receive any wages for their time at work.

62.    Defendant implemented other unlawful practices.  For instance, each shift required one (1) hour of preparation prior to the first customer being seated.  Bartenders and servers were required to perform these preparation tasks.  However, it was Defendant's regular practice to overstaff shifts.  This would result in Plaintiffs and others similarly situated being relieved prior to interacting with customers.

63.    Before being relieved, Plaintiffs and others similarly situated still performed their opening responsibilities at the tipped employee wage without having received any tips for that shift.  This occurred frequently throughout Plaintiffs' and other similarly situated employees' employment. These conditions resulted in Plaintiffs and others similarly situated to be regularly cheated out of their wages.

64.    A combination of all of Defendant's unlawful pay practices caused Plaintiffs and others similarly situated to be denied the wages they rightfully earned.

65.    Because Plaintiffs and other bartenders and servers were compensated below the minimum wage for untipped work, Defendant failed to pay Plaintiffs and others similarly situated the required minimum wage.

66.     Because Plaintiffs and other similarly situated employees were also frequently required to work off-the-clock, they failed to receive at least the minimum wage for each hour of work.

67.     There is no *bona fide* dispute that Plaintiffs and other similarly situated employees are owed at least the minimum wage for all hours worked.

68.     There is no *bona fide* dispute that Plaintiffs and others similarly situated are owed the minimum wage during periods when the spent more than twenty (20) percent of their time performing untipped work.

69.     Furthermore, when Plaintiffs and other similarly situated employees were required to work over forty (40) hours a week, due to the violations alleged herein, they were not properly compensated; Plaintiffs and others similarly situated failed to receive "time-and-a-half" what should have been their regular rates of pay.

70.     There is no *bona fide* dispute that Plaintiffs and other similarly situated employees are owed overtime wages for all hours worked over forty (40) in a workweek.

71.     At no time did Plaintiffs' and other similarly situated employees' duties include work that would make them exempt from federal and state law provisions requiring that they be paid both overtime and minimum wages.

72.     Defendant was well aware that Plaintiffs and others similarly situated regularly worked in excess of forty (40) hours a week.

73.     Defendant was well aware of the untipped work being performed by Plaintiffs and others similarly situated.

74.     Defendant knew that Plaintiffs and other similarly situated employees customarily spent more than twenty (20) percent of their time performing untipped work.

75. Defendant knew that Plaintiffs and others similarly situated regularly performed work off-the-clock.

76. Defendant suffered and/or permitted Plaintiffs to work these hours.

77. In bad faith, Defendant withheld the overtime and minimum wages owed to Plaintiffs and others similarly situated.

78. Thus, on behalf of themselves and all those similarly situated, Plaintiffs seek their wages owed and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

79. Defendant employed Plaintiffs and others similarly situated to perform work at its food and beverage establishments. These establishments include Chili's Baileys Crossroads Virginia, Chili's Manassas Virginia, Chili's Potomac Mills Virginia, Chili's Charlottesville Virginia, Chili's Winchester Virginia, Chili's Staunton Virginia, Chili's Dulles Town Crossing Virginia, Chili's Fredericksburg Virginia, Chilis's Massaponax Virginia, Chili's Lynchburg Virginia, Chili's Springfield Virginia, Chili's Chesterfield Virginia, Chili's Harrisonburg Virginia, Chili's Virginia Center Virginia, Chili's Stafford Virginia, Chili's Culpeper Virginia, Chili's Chester Virginia, Chili's Alexandria Virginia, Chili's Gainesville Virginia, Chili's Waldorf Maryland, Chili's Bowie Maryland, Chili's Salisbury Maryland, Chili's Linthicum Maryland, Chili's Hagerstown Maryland, Chili's Easton Maryland, Chili's Frederick Maryland, Chili's Martinsburg West Virginia and On the Border Bowie Maryland.

80. Plaintiffs and other similarly situated employees either hold or held the title of server or bartender.

81. Upon information and belief, these similarly situated employees were subject to the same unlawful practices described within this Complaint; Defendant paid these similarly situated

employees a tip-credit rate when they performed untipped work; Defendant required these similarly situated employees to work off-the-clock. These practices were done in violation of the FLSA.

82.     The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated with at least the minimum wage for each hour of work.

83.     Defendant knew that Plaintiffs and other similarly situated employees were compensated well below the mandated minimum wage rate.

84.     Defendant knew, or should have known, that Plaintiffs and those similarly situated were entitled to at least the minimum wage for each hour of work.

85.     The FLSA requires tipped employees who perform non-tipped work unrelated to their tipped occupation to be paid the full minimum wage.  The FLSA also requires that the non-tipped work related to the tipped employees' occupation cannot exceed twenty (20) percent of their time worked.  If the non-tipped work exceeds twenty (20) percent, the tipped employee must receive the full minimum wage for all hours worked.

86.     Defendant knew or should have known that Plaintiffs and other similarly situated tipped employees were performing non-tipped work unrelated to their tipped occupation.  This work regularly exceeded twenty (20) percent of their time worked.

87.     Defendant further violated the FLSA by taking a tip-credit against the minimum wage of Plaintiffs and other similarly situated tipped employees without informing them of the tip-credit provisions.

88.     The FLSA also requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated with overtime wages for all hours worked over forty (40) in a workweek.

89.     Defendant knew that Plaintiffs and other similarly situated employees did not qualify for any exemption to the FLSA's overtime provisions.

90.     Defendant knew that Plaintiffs and similarly situated employees typically worked over forty (40) hours per week.

91.     Defendant suffered and/or permitted Plaintiffs and other similarly situated employees to work more than forty (40) hours per week.

92.     Defendant knew or should have known that Plaintiffs and other similarly situated employees were entitled to overtime pay for all hours worked over forty (40) in a workweek.

93.     As a result of the minimum wage violations alleged herein, Plaintiffs and other similarly situated employees are owed additional pay for their hours worked over forty (40) in a workweek.

94.     Defendant failed to properly compensate Plaintiffs and others similarly situated for their overtime hours worked.

95.     Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and those similarly situated for the payment of minimum wages owed for all hours worked and overtime wages at a rate not less than one and one half (1.5) times the minimum wage for all hours worked over (40) in any workweek within the applicable statute of limitations. Plaintiffs make the same demands on behalf of all members of putative Collective class.

96.     Plaintiffs consent to be Party-Plaintiffs in this matter; Plaintiffs' consent forms are attached to this Complaint as Exhibits A – B.

97.     It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

98.     There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

99.     These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

100.    Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

101.    Upon information and belief, others similarly situated will choose to join Plaintiffs in this action and opt in to this lawsuit to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

102.    Plaintiffs bring this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other current and former employees that were employed as servers and bartenders at one or more of Defendant's food and beverage establishments. These establishments are as follows: Chili's Baileys Crossroads Virginia, Chili's Manassas Virginia, Chili's Potomac Mills Virginia, Chili's Charlottesville Virginia, Chili's Winchester Virginia, Chili's Staunton Virginia, Chili's Dulles Town Crossing Virginia, Chili's Fredericksburg Virginia, Chilis's Massaponax Virginia, Chili's Lynchburg Virginia, Chili's Springfield Virginia, Chili's Chesterfield Virginia, Chili's Harrisonburg Virginia, Chili's Virginia Center Virginia, Chili's Stafford Virginia, Chili's Culpeper Virginia, Chili's Chester Virginia, Chili's Alexandria Virginia, Chili's Gainesville Virginia, Chili's Waldorf Maryland, Chili's Bowie Maryland, Chili's Salisbury Maryland, Chili's Linthicum Maryland, Chili's Hagerstown Maryland, Chili's Easton Maryland, Chili's Frederick Maryland, Chili's Martinsburg West Virginia and On the Border Bowie Maryland.

103. Plaintiffs and members of the putative class were subject to the following practices and policies:

- Denial of wages amounting to the minimum wage rate under MWHL for all hours worked; and

- Denial of wages amounting to the minimum wage rate under MWHL by improperly applying the tip-credit against tipped employees, despite: (a) requiring them to perform work outside of their tipped occupation; (b) requiring them to perform non-tipped work that, even if it were related to their tipped occupation, exceeded twenty (20) percent of their time worked in one or more individual workweeks; and (c) failing to inform Plaintiffs and others similarly situated of the tip-credit provisions of Maryland Law; and (d) failing to compensate Plaintiffs and other similarly situated employees with correct overtime wages during weeks when they worked in excess of forty (40) hours, in violation of MWHL.

104. The classes Plaintiffs seek to represent are defined as:

*MWHL Class*

All individuals who are or were employed by Defendant as servers and bartenders for any period ranging from three (3) years prior to the filing of this Complaint to the present, who were paid at a tipped rate and not paid at least the minimum wage for all hours worked and not properly compensated with overtime wages during weeks when they worked over forty (40) hours, in violation of MWHL.

*MWPCL Class*

All individuals who were, but are no longer, employed by Defendant as servers and bartenders for any period ranging from three (3) years prior to the filing of this Complaint to the present, who were paid at a tipped rate and did not receive the minimum wage for all hours worked and overtime wages during weeks when putative class

members worked over forty (40) hours, in violation of MWHL, and thus did not receive all wages owed to them before the termination of their employment with Defendant, in violation of the MWPCL.

105.    Plaintiffs are members of the proposed class they seek to represent.

106.    *Typicality:* Plaintiffs' claims are typical of those of the classes. Specifically, each and every class member of both the MWHL Class and the MWPCL Class worked as a server or bartender for Defendant. Each and every MWHL Class member performed non-tipped work more than twenty (20) percent of their workweek. Each and every MWHL Class member failed to receive the Maryland minimum wage rate. Members of the Class also did not receive proper overtime payments during weeks when they worked over forty (40) hours. Every member of the MWPCL Class failed to receive all wages owed to them at the end of their employment. As a result, each and every Class member suffered the same harm.

107.    *Commonality:* There are questions of law and fact common to the classes. Among the common questions of law and fact applicable to Plaintiffs and the classes are:

    i.  Whether the MWHL Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policies and practices;

    ii.  Whether Defendant employed the MWHL Class within the meaning of MWHL;

    iii.  Whether Defendant violated MWHL by failing to pay Plaintiffs and the MWHL Class minimum wages;

    iv.  Whether Defendant violated MWHL by failing to pay Plaintiffs and the MWHL Class overtime compensation for hours worked in excess of forty (40) per workweek;

    v.  Whether Defendant's violations of MWHL were willful;

vi. Whether Defendant employed the MWPCL Class within the meaning of the MWPCL;

vii. Whether Defendant failed to provide Plaintiffs and other members of the MWPCL Class with all wages due at the time their employment ended;

viii. Whether Defendant's violations of the MWPCL were willful; and

ix. Whether Defendant is liable for damages claimed herein, including, but not limited to, compensatory damages, liquidated or treble damages, statutory damages, interest, costs and attorneys' fees.

108.    *Numerosity:* The individuals in the class are sufficiently numerous that joinder of all members is impracticable.  Although the precise number of such individuals is currently unknown, the class includes dozens of employees who are readily identifiable through Defendant's pay records.

109.    *Adequacy:* Plaintiffs will fully and adequately protect the interests of the classes. They seek the same recovery as the classes, predicated upon the same violations of law and the same damage theory.  Plaintiffs have also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions.  Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the classes.

110.    *Predominance:* The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one set of facts.  This is based on Defendant's failure to pay minimum and overtime wages as required by MWHL and its subsequent failure to pay all wages due at the end of an individual's employment, in violation of the MWPCL.  Similarly, the damages are eminently certifiable in that

Defendant's records will provide the amount and frequency each class member was paid as well as the amount of time each class member worked.

111.    This action is maintainable as a class action.  The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes.   This would establish incompatible standards of conduct for Defendant.  If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a considerable drain and burden on judicial resources.

112.    Accordingly, the Court should certify the proposed classes.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Against Defendant Chesapeake Bay Seafood House Associates, L.L.C.*

***Count I. Violation of the FLSA:  Failure to Pay the Minimum Wage to Plaintiffs and all Members of the Collective Class Who, During The Course of This Matter, Opt-In to the Suit by Submitting their Consent Forms to Become Party Plaintiffs.***

113.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

114.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 206, each employer shall pay wages at a rate that is no less than the federal minimum wage, currently amounting to seven dollars and twenty-five cents ($7.25) per hour.

115.    Plaintiffs have not received compensation from Defendant reflecting the prescribed minimum wage rate for all hours worked for Defendant; rather, Defendant unlawfully failed to ensure that Plaintiffs received at least the minimum wage rate for each hour of work.

116.     Defendant willfully and intentionally did not compensate Plaintiffs for the total minimum amount of wages they were owed by unjustifiably requiring them to work off-the-clock and by improperly applying the tip credit provision of the FLSA.

117.     There is no *bona fide* dispute that Plaintiffs are not exempt from the minimum wage provisions of the FLSA for the work they performed for Defendant.

118.     Under the FLSA, Plaintiffs are entitled to additional wages from Defendant for all hours worked at a rate of pay no less than the federal minimum wage.

### ***Count II. Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiffs and all Members of the Collective Class Who, During The Course of This Matter, Opt-In to the Suit by Submitting their Consent Forms to Become Party Plaintiffs.***

119.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

120.     Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

121.     As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

122.     Defendant willfully and intentionally failed to compensate Plaintiffs properly for the overtime wages they are owed.

123.     There is no *bona fide* dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

124.     All members of the putative Collective are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

125.     Under the FLSA, Plaintiffs and all members of the Collective are entitled to additional wages from Defendant to compensate them for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiffs' and each member of the Collective's regular hourly wage rate.

### *Count III.  Violation of MWHL: Failure to Pay the Minimum Wage to Plaintiffs and to All Members of the MWHL Class, to be Certified by Motion During the Course of This Matter*

126.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

127.     Pursuant to Maryland Wage and Hour Law, Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay wages at a rate that is no less than the federal minimum wage, currently amounting to seven dollars and twenty-five cents ($7.25) per hour.

128.     Plaintiffs have not received compensation from Defendant reflecting the prescribed minimum wage rate for all hours worked for Defendant; rather, Defendant unlawfully failed to ensure that Plaintiffs received at least the minimum wage rate for each hour of work.

129.     Defendant willfully and intentionally did not compensate Plaintiffs for the total minimum amount of minimum wages they were owed by unjustifiably requiring them to work off-the-clock and by improperly applying the tip-credit provision of MWHL.

130.     There is no *bona fide* dispute that Plaintiffs are not exempt from the minimum wage provisions of MWHL for the work they performed for Defendant.

131.    Under MWHL, Plaintiffs are entitled to additional wages from Defendant for all hours worked at a rate of pay no less than the federal minimum wage.

### *Count IV. Violation of MWHL: Failure to Pay Overtime Wages to Plaintiffs and All Members of the MWHL Class, to be Certified by Motion During the Course of This Matter.*

132.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

133.    Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate; furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

134.    Plaintiffs have not received proper compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

135.    Defendant willfully and intentionally did not compensate Plaintiffs for the overtime wages they are owed.

136.    There is no *bona fide* dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

137.    All members of the MWHL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

138.    Under MWHL, Plaintiffs and members of the MWHL Class are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiffs' and each MWHL Class member's regular hourly wage rate.

*__Count V. Violation of the MWPCL: Failure to Pay Wages Owed at the Termination of Their Employment to Plaintiffs and to All Members of the MWPCL Class, to be Certified by Motion During the Course of This Matter.__*

139.   Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

140.   Plaintiffs are entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501 *et seq*., which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

141.   In accordance with §3-505(a), Plaintiffs have not received compensation from Defendant for all wages owed for work performed before the termination of their employment. This is specific to Defendant's failure to pay Plaintiffs the minimum and overtime wages they are entitled to. Defendant also failed to pay members of the MWPCL Class correctly based on the same violations alleged herein.

142.   Defendant willfully and intentionally did not compensate Plaintiffs or the members of the MWPCL Class for the wages owed to them and continued to violate the MWPCL, even after Plaintiffs informed Defendant of the violation.

143.   All members of the MWPCL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

144.   Under the MWPCL, there is no *bona fide* dispute that Plaintiffs and the MWPCL Class are owed wages for work performed while employed by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, pray for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b) In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a Maryland state law class action on behalf of Plaintiffs and all members of the proposed classes;

c) Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and emails of all those individuals who are similarly situated and permitting Plaintiffs to send notice of this action to all those similarly situated individuals;

d) Designating the named Plaintiffs to act as class representatives on behalf of all similarly situated employees for both the FLSA Collective class and the Maryland state law classes;

e) Judgment against Defendant for its failure to pay Plaintiffs, those similarly situated and all those appropriately joined to this matter in accordance with the standards set forth by the FLSA;

f) Judgment against Defendant for its failure to pay Plaintiffs, the members of the MWHL Class, and all those appropriately joined to this matter in accordance with the standards set forth by MWHL;

g) Judgment against Defendant for its failure to pay Plaintiffs, the members of the MWPCL Class, and all those appropriately joined to this matter in accordance with the standards set forth by the MWPCL;

h) Judgment against Defendant and classifying its conduct as willful and not in good faith;

i) Judgment against Defendant and classifying Plaintiffs, the Collective and the Classes as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

j) An award against Defendant for the amount of unpaid minimum wages owed to Plaintiffs, members of the Collective, members of the MWHL Class and all those appropriately joined to this matter;

k) An award against Defendant for the amount of unpaid overtime wages owed to Plaintiffs, members of the Collective, members of the MWHL Class and all those appropriately joined to this matter calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' and other similarly situated employees' respective regular hourly rate for all overtime hours worked;

l)  An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiffs, members of the Collective, members of the classes and all those appropriately joined to this matter, whichever is deemed just and equitable by this Honorable Court;

m)  An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

n)  Leave to add additional Plaintiffs to all Counts alleged herein by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

o)  All further relief deemed just and equitable by this Honorable Court.

## <u>**REQUEST FOR JURY TRIAL**</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

*/s/ Robert J. Leonard*
Robert J. Leonard, Esq. (07183)
rleonard@nicholllaw.com
Benjamin L. Davis, III, Esq. (29774)
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiffs*