IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| **KRISTINA MUELLER,** *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>**CHESAPEAKE BAY SEAFOOD HOUSE ASSOCIATES, LLC**<br><br>Defendant. | Civil Action No: 1:17-cv-01638-ELH |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ADDITIONAL COURT-AUTHORIZED NOTICE OF LAWSUIT

Plaintiffs Kristina Mueller and Jill Mueller (hereinafter, "Plaintiffs"), by and through their undersigned counsel and the Law Offices of Peter T. Nicholl, hereby move this Honorable Court to grant their motion for additional court-authorized notice for their claims under the Fair Labor Standards Act (hereinafter, "FLSA"). In support thereof, Plaintiffs state as follows:

**I.      Introduction and Procedural Background**

Plaintiffs filed their lawsuit on June 15, 2017. Plaintiffs alleged violations of the FLSA's tip credit provisions and sought to represent a class of similarly situated employees. Plaintiffs filed their motion for conditional certification on September 11, 2017.

On September 22, 2017, the parties agreed to a joint stipulation (hereinafter, "stipulation"), in which Defendant agreed to provide the names and last known addresses of all similarly situated employees. [ECF No. 10].  Defendant provided Plaintiffs with a list of two thousand eight hundred and five (2,805) names and addresses. The court-approved notice was sent to every employee on the list. The opt-in period is scheduled to close on December 29, 2017.

To date, Plaintiffs have only received opt-in forms from one hundred and six (106) individuals. This only amounts to three point eight percent (3.8%) of the entire putative class. Three hundred and fifty-seven (357) notices were also returned as undeliverable. *See Exhibit 1*, *Notices Returned as Undeliverable* (hereinafter, "Ex. 1"). Plaintiffs notified Defendant of these concerns. Out of the three hundred and fifty-seven (357) individuals who had a non-working address, Defendant could only produce one hundred (100) updated addresses. *See Exhibit 2*, *Updated Addresses* (hereinafter, "Ex. 2"). The correct addresses for the remaining two hundred and fifty-seven (257) individuals are still unknown. Since contacting Defendant, Plaintiffs have also received forty-nine (49) additional notices that were returned as undeliverable. *See Exhibit 3*, *Additional Notices Returned as Undeliverable* (hereinafter, "Ex. 3").

Plaintiffs have had discussions with many who have opted-in. One such interview was with opt-in Plaintiff Eliana Lawson (hereafter, "Lawson"). Lawson advised that nine (9) of her former colleagues never received the class notice. All nine (9) of these putative class members were identified on the class list. Of these nine (9) individuals, only two (2) were identified on the list of persons who failed to receive notice due to having a non-working address.[1] *See Ex. 2*.

The other seven (7) individuals were not included on the list of three-hundred and fifty-seven (357) persons whose notices were returned undeliverable.[2] *Id.* The reason they failed to receive notice is still unclear. *See Exhibit 4*, *Affidavit of Stephanie N. Tamburrino* (hereinafter, "Tamburrino Aff."); *Exhibit 5*, *Affidavit of Heather Biesel*, (hereinafter, "Biesel Aff."); *Exhibit 6*, *Affidavit of Stephanie Travers* (hereinafter, "Travers Aff."); *Exhibit 7*, *Affidavit of Jennifer Temple* (hereinafter, "Temple Aff."). Although various possibilities were discussed, nothing was

---

[1] The names of these putative class members are Stephanie Travers, Heather Biesel, Cadence Martin and Sibel Ksrakaya.
[2] The names of these persons are Brittany Lantz, Jennifer Temple, Christopher Currier, Nathalie Aquino and Stephanie Tamburrino.

confirmed. It was generally suggested that the individuals included in the putative class are transient in nature. Nevertheless, if it were not for one of their colleagues, these seven (7) individuals would have never been informed of the lawsuit. *See Tamburrino Aff.,¶7; Biesel Aff.,¶7; Travers Aff.,¶7; Temple Aff.,¶7*. They would have never been made aware that their claims are expiring. *Id.* Given the minimal percentage of those who have opted-in, these facts strongly suggest that a substantial portion of the putative class are in a similar position. It can readily be concluded that many other potential plaintiffs have also failed to receive notice.

Defendant has also engaged in conduct that has likely deterred many class members from joining the lawsuit. Such conduct cannot be ignored.

## II.     Legal Standards

Collective actions under the FLSA have been described as a "unique species of group litigation." *Bouthner v. Cleveland*, 2012 WL 738578 (D. Md. Mar. 5, 2012). Unlike Rule 23 class actions, collective actions require prospective class members to opt-in. They will never benefit from the lawsuit until they return their opt-in forms. *Calderon v. GEICO General Ins. Co.*, 279 F.R.D. 337, 341 (D.Md. 2012). Therefore, it is impossible for putative class members to join the lawsuit if they never receive notice.

Another key distinction between Rule 23 classes and FLSA collectives are the implications regarding the statute of limitations. Under Rule 23, the statute of limitations is tolled from the filing of the complaint. In FLSA collectives, the statute is not tolled for the collective member until their opt-in forms are filed. *Houston v. URS Corp.*, 591 F.Supp.2d 827, 831 (E.D. Va. 2008). Consequently, a prospective class member's claim could be time barred before even being made aware of the lawsuit.

Given this danger, timely notice to potential plaintiffs is imperative. *Littlefield v. Dealer Warranty Services, LLC,* 679 F.Supp. 2d 1014, 1018 (E.D. Mo. 2010). It is the court's duty to ensure that members of the putative class receive accurate and timely notice. *Parrilla v. Allcom Cosnt. & Installation Services, LLC,* 688 F.Supp. 2d 1347, 1351 (M.D. Fla. 2010). To ensure that accurate and timely notice is received, district courts have the broad authority to exercise control. *Billingsley v. Citi Trends, Inc.,* 560 Fed.Appx. 914, 921 (11th Cir. 2014). Authorizing additional notice procedures is a means to exert control. *Id*. at 921.

### III.  Argument

A.  <u>The Current Notice Procedures are Insufficient</u>

The class list consisted of over two thousand eight hundred (2,800) names. To date, more than half-way through the opt-in period, only one hundred and six (106) individuals have opted in. This is approximately four percent (4%). This percentage is abnormally low. The typical opt-in rate in FLSA matters is over fifteen percent (15%). *See* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in Federal Courts*, 29 Berkley J. Emp. & Lab. L. 269, 293-94 (2008) (conducting an empirical study of FLSA cases and concluding that the average opt-in rate was fifteen point seventy-one percent (15.71%); *See also* Charlotte S. Alexander, *Would an Opt In Requirement Fix the Class Action Settlement? Evidence from the Fair Labor Standards Act*, 80 Miss. L.J. 443, 467-68 (2010) (reviewing a case study based on opt-in rates and concluding that the average opt-in rate was fifteen percent (15%)).

Based on Plaintiffs' Counsels' experience in litigating FLSA matters, it is also typical for the vast majority of opt-in plaintiffs to join the lawsuit within the first few weeks of receiving the notice. These conditions provide further evidence that the statistics specific to this collective action

are unique. It can be strongly inferred from these statistics that numerous putative class members have failed to receive notice.

This inference is amplified by the circumstances surrounding the nine (9) individuals discussed above. Discussions with these individuals have confirmed that they failed to receive notice in the mail. *See Tamburrino Aff., ¶5; Biesel Aff.,¶5; Travers Aff.,¶5; Temple Aff.,¶5*. All of these individuals were listed on the initial opt-in list. Only two (2) of these individuals were identified on the list of names of persons whose opt-in forms were returned as undeliverable. *See Ex. 1*. The remaining seven (7) persons were not on this list. All nine (9) of these persons were made aware of this matter solely from discussions with their former co-workers. *See Tamburrino Aff.,¶6; Biesel Aff.,¶6; Travers Aff.,¶6; Temple Aff.,¶6*. If they had not been contacted by their co-workers, they would have never been notified of their rights. *See Tamburrino Aff.,¶7; Biesel Aff.,¶7; Travers Aff.,¶7; Temple Aff.,¶7*.

It is believed that all nine (9) of these individuals worked at the Chili's on West Nursery Road. Their failure to receive notice creates the credible suspicion that multiple employees from the other twenty-eight (28) restaurants have also failed to receive notice. These facts trigger this Court's duty to ensure that all members of the potential class receive notice. All those similarly situated must have the opportunity to vindicate their claims.

B. <u>Improper Conduct has Occurred</u>

Defendant engaged in conduct that could have potentially deterred employees from participating. Plaintiffs' Counsel were recently notified that Defendant's agents disseminated arbitration agreements ("agreement(s)") to their current employees. *See Exhibit 8*, *Affidavit of Jennifer Temple*, *Arbitration Agreement* (hereinafter, "Arb. Aff."). This occurred two (2) months after the lawsuit was filed. *Id.* at ¶5. During the dissemination of these agreements, Defendant's

agents did not verbally explain its content. *Id.* at ¶7. At no point did Defendant's agents explain to the prospective class members that there was an ongoing lawsuit that could affect their rights. *Id.* at ¶9. At no point were the potential plaintiffs advised whether signing the agreement would prevent them from joining this matter. *Id.* at ¶9.

As servers and bartenders, many of whom do not have advanced education, they were hardly in a position to understand the implications of the agreement. It is highly reasonable that these individuals would assume that signing the agreement would prohibit them from participating in the lawsuit. Arb. Aff.*,* ¶9. By distributing the agreements after the lawsuit was filed and not explaining its impact on the present lawsuit, Defendant has effectively "chilled" prospective class members from joining. The timeframe in which the agreements were disseminated was sure to confuse and mislead the putative class. *Id*. at ¶5.

Courts have repeatedly warned against any type of conduct that is likely to chill participation in FLSA collective actions. *See Hernandez v. Colonial Grocers, Inc.,* 124 So. 3d. 480, 410 (D. Ct. App. Fla. Oct. 25, 2013) (finding an arbitration agreement unenforceable because its language regarding attorneys' fees was found likely to chill participation); *see also Williams v. Cargill Meat Solutions Corp.,* 2010 WL 2643405 at *2 (E.D. Wis. Jun. 30, 2010) (noting that courts should not permit notice to chill participation in a collective action); *see also Abdul-Rasheed v. KableLink Commc'n., LLC,* 2013 WL 6182321 at *5 (M.D. FL. Nov. 25, 2013) (stating that language in FLSA notice that chills participation would defeat the remedial purpose of the FLSA).

This is not the first instance in which a group of plaintiffs have raised issue with the dissemination of arbitration agreements after a FLSA lawsuit was filed. In *Billingsley v. Citi Trends, Inc.,* the defendant disseminated arbitration agreements to prospective class members after the filing of a complaint with collective counts. *Billingsley,* 560 Fed.Appx. at 922. In response to

the defendant's conduct, the plaintiffs filed a motion for corrective action seeking notice that clearly indicated that employees would be able to join suit even if they had signed an arbitration agreement. *Id*. at 917. Citing the "broad authority" of district courts to manage collective actions, the Eleventh Circuit found that the district court acted properly in correcting "the effect of Citi Trend's misconduct." *Id.* at 922. Notably, the same law firm that represented Citi Trends represents the Defendant in this case.

*Billingsley* is not the only example of courts using their discretion to protect the FLSA rights of prospective class member. *See Williams v. Securitas Security Services USA, Inc.,* 2011 WL 2713818 at *1 (E.D. Pa. Jul. 13, 2011) (ordering corrective measures after finding the defendant's imposition of arbitration agreements during the pre-certification stage to be confusing to the prospective class members); *see also Ojeda-Sanchez v. Bland Farms,* 600 F.Supp. 2d 1373, 1379 (S.D. Ga. 2009) (granting a protective order in a FLSA collective action where the defendant engaged in unsupervised, unsolicited, in person meetings with the plaintiffs in an environment that encouraged speedy and uninformed decision making); *see also Maddox v. Knowledge Learning Corp.,* 499 F.Supp. 2d 1338, 1342 (N.D. Ga. Aug. 2007) (affirming the district court's broad discretion in FLSA collective actions to limit misleading precertification communications).

Defendant has engaged in the same misleading conduct. Therefore, this Court should use its managerial discretion to take corrective measures in response to Defendant's conduct. The remedial purpose of the FLSA fortifies this conclusion.

C. <u>Communication by Email is Recognized as a Valid Form of Notifying Potential Plaintiffs</u>

In order to ensure the entire putative class receives notice, Plaintiffs are requesting the last known email addresses of all persons who have yet to opt-in. This court has routinely approved the use of email communication as a method for FLSA collective notice. *See Butler v. DirectSAT*

*USA, LLC*, 876 F.Supp. 2d 560, 575 (D. Md. 2012) (denying the defendant's argument that email addresses shouldn't be a means for FLSA collective notice due to the fact that communications via email have become the norm); *see also Arnold v. Acappella LLC*, 2016 WL 5454541 (D. Md. Sept. 29, 2016) (affirming that email communication is "now the norm" and numerous cases direct FLSA defendants to produce such information); *see also Scalczyk v. CBC Nat'l. Bank,* 2017 WL 86014 (D.Md Jan. 10, 2017) (ordering email addresses in collective notice lists as it is the "norm" in FLSA cases).

It cannot be denied that email communication constitutes a valid form of FLSA notice. Email communication has become the "norm." Such communication should be a means of ensuring that all those similarly situated receive notice.

### IV.    Conclusion

Based on all the implications discussed above, it is clear that additional notice is needed. Defendant has engaged in unlawful conduct. Numerous prospective class members have failed to receive notice of this pending action and their rights to proceed. Because the statute of limitations is not tolled until an individual member elects to join, eminent harm has resulted from these circumstances.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter an Order compelling Defendant to produce to Plaintiffs' counsel, within fifteen (15) days, a list of the last known email address of every individual listed on the class list who has yet to join this matter. Plaintiffs respectfully request that they be allowed to send additional class notice by mail and email to all prospective class members. Plaintiffs also request a forty-five (45) day extension of the opt-in deadline, which is to commence within fifteen (15) days of the date Defendant provides Plaintiffs with the additional contact information. Plaintiffs also request that additional language

is included in the notice to make clear to all prospective plaintiffs that the signing of and/or distribution of an arbitration agreement does not prevent them from joining this lawsuit. A proposed Order is attached.

                                                Respectfully submitted,

/s/ *Benjamin L. Davis, III*
Benjamin L. Davis, III, Esq.
George E. Swegman, Esq.
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiffs*