**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | |
|---|---|
| **KRISTINA MUELLER,** *et al.* | |
| Plaintiffs, | |
| v. | Civil Action No: 1:17-cv-01638-ELH |
| **CHESAPEAKE BAY SEAFOOD HOUSE ASSOCIATES, LLC** | |
| Defendant. | |

**RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'**
**MOTION FOR ADDITIONAL COURT-AUTHORIZED NOTICE OF LAWSUIT**

Plaintiffs Kristina Mueller and Jill Mueller (hereinafter, "Plaintiffs"), by and through their undersigned counsel and the Law Offices of Peter T. Nicholl, hereby respond to Defendant Chesapeake Bay Seafood House Associates, LLC's (hereinafter "Defendant") Opposition to Plaintiffs' Motion for Additional Court-Authorized Notice of Lawsuit and in support thereof, state as follows:

**I.      ARGUMENT**

A. <u>All Notices were Sent to the Addresses Originally Provided by Defendant</u>

On September 22, 2017, this Court approved the Parties' joint stipulation ("stipulation") regarding conditional certification. [ECF Doc. No. 12]. Pursuant to the stipulation, Defendant provided Plaintiffs with the names and addresses of the two thousand eight hundred and four (2,804) potential class members. *The court-authorized notices were sent to all of the addresses provided by Defendant*. In order to verify the accuracy of the addresses, Plaintiffs also submitted the class list to Strategic Factory, a local business solutions company. Strategic Factory has access to the national address change database, which enables it to detect invalid addresses.

Plaintiffs subsequently began to receive a substantial number of notices and opt-in forms (collectively, referred to as "mailings") that were returned as undeliverable. To keep track of the returned mailings, Plaintiffs created a spreadsheet that contained the name and address for the person whose mail had been returned. In compiling the spreadsheet, a technical error occurred; the names and addresses of a few persons unrelated to this lawsuit were keyed into the spreadsheet. Plaintiff quickly recognized this error and notified Defendant. A revised and accurate spreadsheet was immediately sent to Defendant.

Some of the addresses recorded on the spreadsheet were also generated by Strategic Factory, not Defendant. Because a few of these addresses are different from the ones Defendant disclosed, Defendant believes this indicates that not all notices were sent to the addresses that it provided. Defendant is clearly mistaken. All the notices were sent to the addresses Defendant originally provided. Only after a mailing was returned undeliverable did Plaintiffs use the address given by Strategic Factory. This fact eliminates Defendant's argument that not all notices were sent to the addresses it provided. There is no need for any further discussion regarding this fact.

B. <u>Defendant Simply Does Not Want to Accept that Many Class Members Failed to Receive Notice</u>

Defendant repeatedly attempts to minimize the significance regarding many potential class members not receiving notice. *See* Defendant's Opposition to Plaintiffs' Motion for Additional Court-Authorized Notice of Lawsuit (hereinafter, "Def.'s Opp.") at 2. [ECF Doc. No. 128]. Defendant claims that by stipulating, the Parties have bound themselves to the current notice procedures. *Id.* at 3. Defendant's claim is problematic.

By simply focusing on the terms of the stipulation, Defendant ignores the negative impact that insufficient notice has on potential class members. Fair Labor Standards Act (hereinafter, "FLSA") collective actions are unique. *Bouthner v. Cleveland,* 2012 WL 738578 at *3 (D. Md.

Mar. 5, 2012). The combination of the opt-in requirement and the prohibition against the tolling of the statute of limitations puts potential class members at substantial risk of losing their rights if they fail to receive notice. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

In light of these concerns, district courts have the broad discretion to manage FLSA notice procedures. *Billingsley v. Citi Trends, Inc.*, 560 Fed.Appx. 914, 921 (11th Cir. 2014). The fact that the Parties stipulated to conditional certification does not alter this Courts' discretion. Plaintiffs' counsel also have an obligation to ensure accurate and timely notice. *Parilla v. Allcom Cosnt. & Installation Services, LLC*, 688 F.Supp. 2d 1347, 1351 (M.D. Fla. 2010). Counsel are merely seeking to meet their obligation and asking this Court to help.

Defendant also claims that a "handful" of potential class members not receiving notice is insignificant. Def.'s Opp. at 8. Defendant's assertion that only a "mere handful" of potential class members failed to receive notice distorts the facts presented by Plaintiffs. *See* Plaintiffs' Memorandum in Support of Their Motion for Additional Court-Authorized Notice of Lawsuit (hereinafter, "Pls.' Memo.") at 2 [ECF Doc. No. 110-1]. Plaintiffs were notified by one individual, who only worked at one of Defendant's restaurants, that many of her colleagues did not receive class notice. *Id.* at 2. Plaintiffs were subsequently contacted by these individuals, which led to the filing of their declarations. *Id*. The fact that these individuals did not receive notice suggests that there are also numerous other individuals who worked at other restaurants that failed to receive notice. *Id*. Defendant's claim that only a "mere handful" of persons did not receive notice ignores this possibility. It can be readily inferred that there is likely a much larger pool of persons who similarly did not receive notice. It is also likely that these persons were never informed of the lawsuit by a former co-worker. Given this likelihood, additional notice is needed. The remedial purpose of the FLSA only strengthens this need.

3

C.   Defendant Cannot Simply Minimize the Negative Impact of Distributing the Arbitration Agreements

Defendant cannot simply downplay the harm caused by its decision to distribute arbitration agreements ("agreements") during this litigation. Defendant concedes that it disseminated arbitration agreements to five hundred and seventy-three (573) potential class members. Def.'s Opp. at 5.  Defendant further concedes that the agreements were disseminated two (2) months after the instant lawsuit was filed. *Id*. Defendant attempts to minimize the chilling effect of this conduct. Defendant repeatedly claims that the number of individuals who received the agreements constitutes only a "small portion" of the potential class. *Id*. at 5, 8, 11. Defendant is obviously mistaken. Five hundred and seventy-three (573) potential class members constitutes a significant figure. One (1) out of every five (5) potential class members were given the agreement. This is roughly twenty percent (20%). Thus, a large portion of the class could have potentially been affected by Defendant's deterring conduct.

Defendant further contends that there was nothing regarding the dissemination of the agreements that was improper. Defendant relies on the language within each agreement, which states that signing the agreement would not prohibit potential class members from participating in this lawsuit. *Id*. at 5. Because of this language, Defendant claims that it is not plausible for the dissemination of the agreements to have chilled class participation. *Id*. Defendant's claims are erroneous. Defendant blatantly ignores the legal authorities. Courts have repeatedly warned against *any type of conduct* that is likely to have chilled class participation. *Hernandez v. Colonial Grocers, Inc.,* 124 So. 3d. 408, 410 (D. Ct. App. Fla. Oct. 25, 2013). Although the conduct may have been legally permissible, it could still have a chilling effect. *Id*.

Plaintiffs have not alleged that the arbitration agreements did in fact prevent participating in the lawsuit. However, the timing of their dissemination is concerning. Since the agreements

were disseminated two (2) months after the collective Complaint was filed, Defendant knew that the persons receiving the agreements were likely to receive class notice in the future. Pls.' Memo. at 5. Therefore, Defendant had a responsibility to inform its employees of the impact the agreement would have on the present lawsuit. However, Defendant failed to explain how signing the arbitration agreement would affect the instant litigation. *Id.* at 6. Defendant's failure to do so led potential class members to be confused. *Id*. Once they received the court-authorized notice, they were confused as to whether their signing of the agreement would prevent them from joining this matter. *Id.* at 7. Such confusion is synonymous with a chilling effect. *Wright v. Adventures Rolling Cross Country, Inc.,* 2012 WL 2239797 at *5-6 (N.D. Cal. June 15, 2012). Such an effect must be corrected. *Id*.

Courts have routinely taken corrective measures to reverse the effects of the improper dissemination of arbitration agreements. Plaintiffs' Memorandum lists these authorities. *See Williams v. Securitas Security Services USA, Inc.,* 2011 WL 2713818 at *1 (E.D. Pa. Jul. 13, 2011); *Ojeda-Sanchez v. Bland Farms,* 600 F.Supp. 2d 1373, 1379 (S.D. Ga. 2009); *Maddox v. Knowledge Learning Corp.,* 499 F.Supp. 2d 1338, 1342 (N.D. Ga. Aug. 2007). Defendant does not dispute these authorities, but deems them inapplicable. Def.'s Opp. at 9. This is based on the fact that the plaintiffs in the cases cited sought a different form of relief. *Id*. However, the form of relief sought does not alter the holdings that resulted from each court's analysis. Pls.' Memo. at 7. The courts took corrective action based on finding the employers' conduct to be improper. Like the employers in those cases, Defendant's conduct was also improper. Defendant was well aware of the chilling effect that could result from disseminating the arbitration agreements while class

motions were pending.[1] This Court should take corrective measures to alleviate this effect. The harm resulting from Defendant's conduct must be addressed.

    D.   <u>Defendant's Attempt to Limit the Scope of Additional Notice Procedures Should be Rejected</u>

Defendant suggests that if this Court should rule in Plaintiffs' favor, additional notice should only be sent "to the 406 individuals whose mail was returned as undelivered." Def.'s Opp. at 8. Defendant attempts to justify its position by claiming that these four hundred and six (406) potential class members are the only persons "known to have not received notice." *Id.* at 8. Defendant's claims are flawed.

Defendant's suggestion that only four hundred and six (406) persons failed to receive notice is simply incorrect. Defendant ignores the issues raised by Plaintiffs. Plaintiffs have made clear that they have been in contact with (7) persons who failed to receive notice and that these persons were not included on the list of individuals whose mailings were returned. Pls.' Memo. at 5. These facts substantiate Plaintiffs' argument; they create the credible suspicion that many other potential class members have failed to receive notice. Based on these facts, additional notice should be sent to all persons who have yet to join this lawsuit. Steps must be taken to ensure that all are given notice of their rights.

Defendant further suggests that "any email notification should be limited to providing the same notice that was mailed […] [and that] no other communication should be permitted." Def.'s Opp. at 8. Defendant's request for there to be no other communications has no merit. Defendant's

---

[1] This is not the first time Defendant's Counsel disseminated arbitration agreements to prospective class members after receiving a complaint with collective counts. Defendant's Counsel represented defendant in *Billingsley v. Citi Trends, Inc.* Defendant's Counsel issued arbitration agreements during litigation with the intent to chill collective action participation. The plaintiff in *Billingsley* filed a motion for corrective action seeking notice that clearly indicated that employees would be able to join suit even if they had signed an arbitration agreement. Citing the "broad authority" of district courts to manage collective actions, the Eleventh Circuit found that the district court acted properly in correcting "the effect of Citi Trend's misconduct." *Id.* at 922.

request ignores Plaintiffs' concerns regarding the dissemination of the arbitration agreements. Additional language is needed in the notice to alleviate these concerns. It must be made clear to all potential class members that the signing of an arbitration agreement does not preclude them from participating in this lawsuit.  Defendant fails to make any argument as to why this language should not be included. This is because there is no justifiable argument that Defendant can make. All Defendant can do is attempt to justify its chilling conduct.

If no corrective measures are taken, Defendant will succeed in its attempt to chill class participation. If this Court fails to intervene, permanent damage will result. Potential class members will never be properly informed of their rights. They will never know that they could have still participated in this lawsuit. Their opportunity to seek legal remedies will become dormant. Their inability to vindicate their claims will be everlasting.

## II.   CONCLUSION

For all these reasons, additional notice procedures are required. Thus, Plaintiffs respectfully request that this Court grant their Motion for Additional Court-Authorized Notice.

Respectfully submitted,

/s/ *Benjamin L. Davis,III*
Benjamin L. Davis, III, Esq.
George E. Swegman, Esq.
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Counsel for Plaintiffs*